UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO 25-345 (ECT/DLM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff | ) | |
| v. | ) | DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE |
| MICHAEL SALAS | ) | |
| Defendant | ) | |

## INTRODUCTION

Defendant Michael Salas, through his undersigned attorney, submits this Sentencing Memorandum and Motion for Downward Variance. This filing supplements Mr. Salas' Position on Sentencing Factors, filed today at ECF No. 42.

Mr. Salas respectfully requests that the Court vary downward from the 292 to 365 advisory guidelines range and impose the 15-year mandatory minimum sentence. As set forth below, this sentence is sufficient, but no greater than necessary to fulfill all of the purposes of sentencing set out in 18 USC §3553(a).

## MOTION FOR DOWNWARD VARIANCE

### I. THE PRODUCTION GUIDELINES ARE EXCESSIVE AND DISPROPORTIONATE IN MR. SALAS'S CASE.

A Court need not follow the sentencing range if it disagrees with a relevant policy reflected in the Guidelines. *See Spears v. United States*, 555 U.S. 261, 264, (2009). This authority to vary from the Guidelines "is at its greatest when the offense Guideline at issue is not the product of the Commission's empirical analysis and technical expertise." *United States v. Diaz*, No. 11–CR–821, 2013 WL 322243, at *3 (E.D.N.Y. Jan. 28, 2013).

The advisory guidelines for child pornography offenses, both production and non-production offenses, have been widely criticized because they are "largely the product of congressional directives, some of which the Sentencing Commission actively opposed, rather than Commission study and expertise."[1] *United States v. Munoz,* 11-CR-1167, at page 8, ECF Doc. No. 107 (D. Minn. 2012), *quoting and citing United States v. Diaz*, 720 F. Supp. 2d 1039, 1042 (E.D. Wis. 2010) (footnote and other citations

---

[1] The guidelines for production of child pornography offenses share the same flaws as guidelines for child pornography possession and distribution. *United States v. Jacob*, 631 F. Supp.2d 1099, 1115 (N.D. Iowa 2009) (rejecting § 2G2.1 on policy grounds because it has "some of the same flaws" as § 2G2.2); *United States v. Huffstatler*, 571 F.3d 620, 623 (7th Cir.2009) (noting § 2G2.1, like § 2G2.2, was not formulated on the basis of the empirical expertise of Sentencing Commission); *United States v. Price*, 775 F. 3d 826, 840 (7th Cir. 2014) (holding the district court properly varied from the guidelines based on its policy disagreement with § 2G2.1.)

omitted); *see United States v. Jacob*, 631 F. Supp.2d 1099, 1115 (N.D. Iowa 2009) (rejecting § 2G2.1 on policy grounds because it has "some of the same flaws" as § 2G2.2).

In Mr. Salas' case, the production guidelines do not provide a fair sentencing range because they treat him the same as offenders engaged in more serious conduct. An October 2021 study by the United States Sentencing Commission found that the great majority of production offenses (80.9%), involved physical sexual contact. U.S. Sentencing Commission, *Federal Sentencing Of Child Pornography Production Offenses*, (October 2021) at pp. 35-36;[2] *see also United States v. R.V.*, 157 F.Supp.3d 207, 210 (E.D. N.Y. 2016) ("By definition, producers of child pornography are child molesters, frequently representing the worst and most dangerous type of offender.") Mr. Salas' offense conduct, by contrast, did not. Nonetheless, even the low end of the guidelines range calculated by the Government (324 months) and the PSR (292 months) would have Mr. Salas facing nearly thirty-years in prison. As the PSR concluded, a sentence within this range is excessive and unnecessary:

> Comparative to other production of child pornography cases, this offense appears somewhat mitigated based on one known

[2] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (last accessed 8/10/26).

> victim and its occurrence within a limited time frame (February to July 2025). There is no evidence to suggest the defendant engaged in any direct sexual contact of the victim or any minor. As such, the advisory guideline range in this case appears greater than necessary to accomplish the goals of sentencing.

(PSR ¶104); *see also United States v. R.V.*, 157 F.Supp.3d at 210 ("Failure to distinguish among the multitude of vectors involved in a sentencing decision is particularly grave in the field of child pornography offenses.")

## II. MR. SALAS' AGE AND HEALTH ISSUES SUPPORT A DOWNWARD VARIANCE.

Mr. Salas is 51 years old. (PSR at F.2.) Along with middle-age maladies of high blood pressure and diabetes, he suffers from significant mental health issues, including past diagnosis of bipolar disorder, major depressive order, post-traumatic stress disorder and unspecified personality disorder. (See PSR ¶¶58, 61-64; See Dr. Ernest Boswell Psychological Evaluation, Defendant's Exhibit 1.) This combination of age and poor health greatly increase the punitive effect of any sentence imposed.

In a study that set the age of 50 as "elderly," the Department of Justice found that elderly defendants faced greater difficulties when incarcerated:

> [M]anagement problems with elderly inmates, ... are intensified in the prison setting and include: vulnerability to abuse and predation, difficulty in establishing social relationships with younger inmates, need for special physical accommodations in a relatively inflexible physical environment.

*See* Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates, U.S. Dept. of Justice National Institute of Corrections, 9, 10 (2004). This study observed that older inmates are uniquely vulnerable to abuse and predation, that they experience difficulty in establishing social relationships, that they often need special physical accommodations in a relatively inflexible physical environment, and that many need special programs in a setting where special privileges are disdained. *Id.* at 11. This study further found that older first-time offenders "are frequently severely maladjusted and especially at risk for suicide, explosiveness, and other manifestations of mental disorder" and that "their victimization potential is high" since "their behaviors are not well tolerated by other inmates, their victimization potential is high." *Id.*

Given his age and his ongoing health conditions, any sentence imposed upon Mr. Salas will necessarily be harsher and more difficult than a sentence imposed upon a younger, healthier defendant. As a result, a downward variance is appropriate.

## III. THE COLLATERAL CONSEQUENCES MR. SALAS WILL EXPERIENCE SUPPORT THE REQUESTED VARIANCE.

Mr. Salas' status as a convicted sex offender compounds the extra punishment resulting from his age and health difficulties:

> It is commonly noted that – regardless of jurisdiction – sex offenders are at the bottom of the prisoner hierarchy, living in

> near-constant fear of abuse and assault from prisoners and sometimes staff.

*Living Among Sex Offenders, Identity, Safety and Relationships at Whatton Prison*, The Howard League for Penal Reform, p. 4 (Citations omitted.)[3]

> [S]ex offenders are a distinct and disfavored category within prison populations, subject to heightened abuse from both corrections officers and fellow inmates. By many reports, sex offenders are themselves disproportionately likely to be the target of sexual assault in prison.

Alice Ristroph, *Sexual Punishments*, 15 Colum. J. Gender & L. 139, 159-60 (2006) (footnotes omitted); Emily Horowitz, *Growing Media and Legal Attention to Sex Offenders: More Safety or More Injustice?* 2007 J. Inst. Just. Int'l Stud. 143, 155-56 (2007) ("Sex offenders are aware that being a murderer is a much less threatening and offensive crime among prison populations.)

Even after Mr. Salas has done his time, the collateral consequences of his conviction will continue:

> To be adjudicated guilty necessarily results in denomination as a sex offender; automatically provided is a lifetime of continuous punishment—being marked as a pariah with severe restrictions on residence, movements, activities and associations. Adding unnecessary, unduly long, periods of incarceration is inappropriate and it should be avoided.

---

[3] Available at: https://howardleague.org/publications/living-among-sex-offenders/ (Last accessed 8/7/26).

*United States v. R.V.*, 157 F.Supp.3d at 210; *See also Model Penal Code: Sexual Assault and Related Offenses*, General Commentary at 12 (Am. Law. Inst., Discussion Draft No. 2, 2015) ("[T]he treatment of sex offenders has borne many of the hallmarks of an unjustifiably punitive state. For instance, sex offenders as a class have been subjected to some of the most unforgiving and indiscriminate collateral consequences of conviction, such as unduly severe residency restrictions or registration requirements.").

In short, the mandatory 15-year prison term, when combined with the unavoidable, extensive and lifelong collateral consequences Mr. Salas will suffer as a sex offender, serves as a severe and sufficient punishment.

## IV. THE 3553(a) FACTORS SUPPORT A DOWNWARD VARIANCE TO A SENTENCE OF 15 YEARS.

The last step of the sentencing process is for the district court to consider the §3553(a) factors to determine whether they support the sentence requested by a party. *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

### A. Nature and Circumstance of the Offense and History and Characteristics of the Defendant.

#### 1. Nature and circumstances of the offense.

Without question Mr. Salas's offense was serious and his conduct disturbing. There is no excuse for his behavior. As stated above, however, several facts, including that he had no direct physical contact with his one victim, warrant the requested variance. While it is unseemly to split hairs

when discussing the conduct of a person victimizing a 12-year old minor, it is necessary to distinguish Mr. Salas' conduct (for which he can receive no less than 15 years in prison) from the conduct of a typical production defendant who also physically assaults multiple victims.

**2. History and characteristics of the defendant.**

Mr. Salas comes before this Court with zero criminal history points. (PSR ¶¶45-47.) Until this offense there was not a hint of any improper behavior towards minors. This is reflected in the shock his immediate family members experienced when they learned of his offense. (Dr. Boswell Report at pp 5-6.)

Again, Mr. Salas' history and characteristics provide no excuse for his conduct. They do, however, support requested variance because they show that Mr. Salas is not a dangerous predator who has mercilessly preyed on minor victims for years:

> The current examiner opines that Mr. Salas's thoughts, feelings, and behavior are the direct result of negative family of origin experiences, early sexual assault by a neighbor, use of cannabis to escape emotional pain and depression, and dysfunctional personality dynamics
>
> * * *
>
> Due to his history of familial dysfunction, early sexual trauma, and drug use, Mr. Salas existed in a social vacuum, lacking the necessary social skills to form healthy adult relationships. Over time he became increasingly detached from social contact and was extremely isolated and lonely. However, his sexual urges remained active but unfilled. Thus, he created a social media persona and used this media

> persona to create an artificial image to counter feelings of loneliness and self-inadequacy. In essence, he created a fake identity of a caring, loving individual. He eventually, became obsessed with contacting the minor female in question to play out some of his sexual fantasies.

(Dr. Ernest Boswell Evaluation, Defendant's Exhibit 1 at pp. 16-17.) While Dr. Boswell's assessment may provide little solace to the victim, it does support imposition of a lower, yet still severe, 15-year mandatory minimum prison sentence.

**B. <u>Purposes of Sentencing/Need for the Sentence Imposed</u>.**

**1. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

For a person like Mr. Salas who has never been imprisoned before, the 15-year mandatory minimum is a severe and meaningful punishment. *See United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming sentence below the guidelines range as resonating with the goals of just punishment and adequate deterrence in part because the sentence would mean more because the defendant had never previously been imprisoned). The punishment effect is further increased because of Mr. Salas' age and mental and physical health conditions. *See United States v. Willis*, 322 F. Supp. 2d 76, 83 (D. Mass. 2004) ("a given sentence may be uniquely disproportionate to the elderly offender; elderly criminals will lose a greater percentage of their lives than younger criminals and may suffer more from the same sentence.")

**2. Need for deterrence.**

Mr. Salas's requested variance advances the idea of "marginal deterrence, i.e., that "punishing two crimes of different gravity the same is unsound when to do so would encourage additional crimes." Tracey L. Meares, Neal Katyal Dan M. Kahan, *Updating the Study of Punishment*, 56 *Stan. L. Rev.* 1171, 1172-80 (2004).

> Those who think that the idea of marginal deterrence should play some part in criminal sentences — that is, that the harshest sentences should be reserved for the most culpable behavior — might find little room left above Newsom's sentence for the child abuser who physically harms his victim, who abuses many different children, or who in other ways inflicts greater harm on his victims and society.

*United States v. Newsom*, 402 F.3d 780, 785-86 (7th Cir. 2005); *see also United States v. Kirkpatrick*, 589 F.3d 414, 416 (7th Cir. 2009) ("[L]eaping close to the statutory maximum creates a risk of unwarranted disparity with how similar offenders fare elsewhere—not only because it may overpunish [a defendant], but because it leaves little room for the marginal deterrence of persons whose additional deeds are more serious . . . .")

The requested variance also furthers general deterrence, because a 15-year federal prison sentence, a lengthy period of supervised release, and the life-long collateral consequences of being a convicted sex offender, all serve as an extremely strong deterrent to Mr. Salas as well as the public at large.

**3. Protection of the public from further crimes of the defendant.**

A sentence longer than 15-years is not necessary to protect the public. As an older person with no recent criminal history and no offenses against minors, Mr. Salas is unlikely to re-offend after his release. *See United States v. Lucania*, 379 F.Supp.2d 288, 297 (E.D.N.Y. 2005) ("Post-*Booker* courts have noted that recidivism is markedly lower for older defendants"); *United States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants "with zero criminal history points are less likely to recidivate than all other offenders.") Further protection to the public is provided by the period of supervised release, likely to last the rest of Mr. Salas' natural life.

**4. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Section 3553(a)(2)(D) requires a sentencing court to consider the need to provide defendants with training, medical care and correctional treatment in the most effective manner. While Dr. Boswell's Evaluation did not pull any punches, he did find grounds for optimism:

> Finally, the current examiner opines Mr. Salas possesses the motivation and ability to engage in a process of therapeutic interaction to understand how his pedophilic urges materialized and how to resolve these issues so that he is not an elevated risk of future offending.

(Dr. Boswell Evaluation, p. 17.) In light of this amenability, varying

downward to the 15-year mandatory minimum will give Mr. Salas ample time to obtain the treatment he desperately needs while providing him with incentive to do so:

> There needs to be a light at the end of the tunnel for each of these patients who cooperate, accept, acknowledge and show their willingness to work with the system to correct their behaviors as such so that they are no longer a substantial threat to society....

*Matter of Application of New York v. Douglas S.*, 2008-002297 (N.Y.Sup.Ct. 5th Jud. Dist.2009) (An administrative case where the judge was analyzing the cases of 145 sex offenders.)

**DESIGNATION REQUEST**

Mr. Salas respectfully requests that this Court recommend that he be incarcerated at FCI Seagoville in Seagoville, Texas or another prison near his hometown of San Antonio, Texas.

Dated: August 11, 2026.

**JOHNSON & GREENBERG, PLLP**

s/Lee R. Johnson______
Lee R. Johnson #189935
5775 Wayzata Boulevard
Suite 700
St. Louis Park, MN 55416
(952) 545-1621

Attorney for Defendant
Michael Salas