UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-345 (ECT)

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL SALAS,

Defendant.

**GOVERNMENT'S SENTENCING POSITION AND RESPONSE TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

Over the course of approximately five months, defendant Michael Salas used deception, coercion, and threats to compel an eleven-year-old girl to produce sexually explicit images and videos of herself. Material that Salas solicited, directed, collected, and in part produced himself. On February 11, 2026, Salas pleaded guilty to Count 1 of the Indictment, Production and Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) and (e). The offense carries a mandatory minimum term of 15 years' imprisonment and a statutory maximum of 30 years. 18 U.S.C. § 2251(e).

The government does not minimize the adversity that marked Salas's childhood or the mental-health and substance-abuse struggles that have followed him into adulthood. Those considerations are entitled to the Court's attention. But they do not diminish what Salas did to an eleven-year-old child. He studied her, learned everything about her life, invented personas to manipulate her, weaponized her fear of losing her family, and month after

month directed her to sexually degrade herself for his gratification. For the reasons set forth below, the government respectfully submits that a sentence of 292 months' imprisonment, the bottom of the advisory Guidelines range, is sufficient, but not greater than necessary to satisfy the purposes of sentencing.

**The Offense Conduct**

In March 2025, the National Center for Missing and Exploited Children and law enforcement received anonymous information that an eleven-year-old girl, identified in the record as Minor Victim A, was being blackmailed over social media into sending nude photographs of herself. PSR ¶ 8. The information identified several Instagram accounts, two of which were traced to Salas, a fifty-one-year-old man in San Antonio, Texas, communicating with a child hundreds of miles away in Minnesota. *Id.* When Minor Victim A was interviewed, she confirmed that she was being sexually exploited online and reported that she had been threatened that if she did not continue sending sexually explicit photographs of herself, the images she had already sent would be posted publicly. PSR ¶ 9.

The investigation revealed a sustained campaign of manipulation. Salas contacted Minor Victim A across multiple platforms and accounts, presenting himself as an "uncle" figure and offering the child Robux[1] in exchange for

1 "Robux" is virtual currency used in an online game popular with children.

producing custom sexually explicit videos to his specification. PSR ¶¶ 10–11. When the child hesitated or stopped responding, Salas did not stop, he escalated. He fabricated a second persona, a young girl he called "Jasmine" or "Jazzy," purportedly the "uncle's" niece, and used that invented "friend" to relay the uncle's demands, to describe the gifts the uncle supposedly provided, and to press the child to resume complying. PSR ¶ 11. He later invented a third persona, "Angela," described as the "uncle's" significant other, to further the deception. PSR ¶ 12.

The manipulation turned to overt coercion. Posing as "Jasmine," Salas repeatedly threatened Minor Victim A that the "uncle" would report her to law enforcement and to child-protection authorities for child pornography if she did not send what he demanded. PSR ¶ 12. The child responded that she was scared, that she did not want to be taken from her home by child protective services, and she pleaded with "Jasmine" to protect her. *Id.* Rather than relent, Salas exploited that fear, affirming to the child that she could be removed from her family to extract further compliance. *Id.* Salas did all this knowing exactly who his victim was. The record reflects that he knew her identity, her age, the identities of her family members, her and her grandmother's home address, and where she attended school. PSR ¶ 16. On at least one occasion, Salas even expressed a desire to travel to Minnesota to meet the child in person. *Id.*

The volume of material Salas amassed reflects the sophistication, scale, and duration of the exploitation. From the *unc2948* Instagram account alone, law enforcement recovered approximately 216 images and 47 videos containing images of, or content related to, Minor Victim A, including material depicting the child engaging in sexually explicit conduct. PSR ¶ 13. From Salas's Snapchat account, investigators recovered approximately 683 messages exchanged with the child between March and July 2025, including files depicting the child sexually abusing herself at Salas's direction. PSR ¶ 14. Salas was not merely a passive recipient of images. He produced child pornography himself, capturing screenshots during a live video call with the child on May 25, 2025, which he then saved to his account. *Id.* He also initiated sexually explicit exchanges and transmitted images of himself to the child. *Id.* In total, Salas's accounts contained approximately 85 child-sexual-abuse images and 31 such videos that he enticed, manipulated, and coerced Minor Victim A into producing and sending to him. PSR ¶ 17.

The count of conviction arises from one such directive. After Salas pressed the child for "new videos," Minor Victim A produced and sent a 45-second video of herself, on or about March 9, 2025, in which she displayed herself and performed for the camera as Salas had demanded. PSR ¶¶ 15, 25. Salas responded by requesting still more explicit material. *Id.* ¶ 15. Although Salas stands convicted on that single video, it was neither the beginning nor

the end of his conduct. It was one act within a months-long course of sexual exploitation of a single, identified eleven-year-old child.

**The Presentence Investigation Report**

The government agrees with the PSR's Guidelines calculation. The Guideline for a violation of 18 U.S.C. § 2251(a) is U.S.S.G. § 2G2.1, which supplies a base offense level of 32. PSR ¶ 26. Two specific-offense-characteristic enhancements apply and are undisputed. A four-level increase because the offense involved a minor who had not attained the age of twelve, U.S.S.G. § 2G2.1(b)(1)(A), and a two-level increase because the offense involved the use of a computer to solicit a minor's participation in sexually explicit conduct, U.S.S.G. § 2G2.1(b)(6)(B). PSR ¶¶ 27, 30. The resulting adjusted offense level is 38. PSR ¶ 34.

The PSR further applies the five-level enhancement under U.S.S.G. § 4B1.5(b) for a repeat and dangerous sex offender against minors. PSR ¶ 35. That enhancement applies where the offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. That is, prohibited sexual conduct with a minor on at least two separate occasions. Salas's conduct easily satisfies that standard. The record includes at least 23 produced videos depicting Minor Victim A sexually abusing herself, together with additional files created on separate dates, all at Salas's direction. *Id.* After the three-level reduction for acceptance of

responsibility, the total offense level is 40. PSR ¶¶ 36–38. With a criminal history category of I, the advisory range is 292 to 360 months, reflecting the 360-month statutory maximum. PSR ¶¶ 43, 81; U.S.S.G. § 5G1.1(c)(1).

The probation officer's Part F discussion identifies several features of the case as "mitigating." For example, that there was a single identified victim, that the conduct occurred within a defined period, and that there is no evidence Salas physically contacted the victim. PSR ¶ 104. The government addresses those observations directly in the § 3553(a) analysis below. In short, the fact that Salas fixated on and exploited one child does not lessen his culpability where that exploitation was relentless. The "limited" five-month span was a sustained campaign, not a lapse, and the absence of physical contact is cold comfort where Salas directed the child to violate herself on camera and expressed a desire to travel to meet her. The government's recommendation is already at the bottom of the range, reflecting a measured accounting of the relative mitigation present in this record.

**<u>The Appropriate Sentence</u>**

In following the sentencing methodology laid out by the Supreme Court, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of

the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50. Section 3553(a) requires the Court to consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a). But a district court is not required to provide a mechanical recitation of the Section 3553(a) factors and "has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. San-Miguel*, 634 F.3d 471, 475-76 (8th Cir. 2011).

**1. The Nature and Circumstances of the Offense**

The production of child pornography stands among the gravest federal offenses, reflected in a fifteen-year mandatory minimum and a base offense level of 32. 18 U.S.C. § 2251(e); U.S.S.G. § 2G2.1(a). The gravity is not abstract. Each image and video Salas extracted is a permanent record of a child's sexual abuse, and the harm to Minor Victim A did not end when Salas was arrested because the material he created can circulate indefinitely, and the knowledge of that fact is itself a lasting injury.

What distinguishes this offense, and what the raw Guidelines label of "production" does not fully capture, is the calculated cruelty of Salas's method.

This was not a single opportunistic act. Salas identified an eleven-year-old child, learned her name, her age, her family, her home address, and her school, and then set about systematically dismantling her defenses. PSR ¶ 16. He offered a child a child's currency, Robux, to make her degradation feel like a transaction. PSR ¶ 10. When persuasion failed, he manufactured an entire cast of fictional people to isolate the child and to make his demands appear to come from every direction at once. PSR ¶¶ 11–12. And when manipulation was not enough, he turned to fear, threatening to report an eleven-year-old to the police and to child-protection authorities, and then exploiting her terror of being taken from her family to force her compliance. PSR ¶ 12.

The probation officer notes that there is no evidence Salas physically touched the victim. PSR ¶ 104. That is true, and the government does not suggest otherwise. But the observation carries limited mitigating weight on these facts. Salas caused the child to penetrate and abuse herself on camera, repeatedly, at his direction, PSR ¶¶ 14, 35. That is conduct that inflicts the same violation whether the offender is in the room or issuing commands from a thousand miles away. And the absence of contact was not for want of desire. Salas told the child he wanted to travel to Minnesota to meet her. PSR ¶ 16. The physical distance between Salas and his victim was a fact of circumstance, not a limit he imposed on himself.

**2. The History and Characteristics of the Defendant**

The government acknowledges the difficult circumstances of Salas's life. He was raised in poverty by a single mother in an environment marked by violence and instability. He witnessed his mother abused and he was himself sexually molested as a child. PSR ¶¶ 51, 53. He has a documented history of bipolar disorder, depression, and post-traumatic stress disorder, along with longstanding substance abuse that began in adolescence. PSR ¶¶ 61, 67–69. Salas even attempted to take his own life at the time of his arrest and has struggled with suicidal ideation for years. PSR ¶¶ 18, 61, 63. These are real hardships, and the Court should weigh them. The government's recommendation of a sentence at the bottom of the range credits them.

But the same evaluation that documents Salas's history also documents the risk he presents. The court-ordered psychological evaluation diagnosed Salas with, among other conditions, pedophilic disorder. PSR ¶ 64. The evaluator's Risk Matrix 2000 assessment placed Salas's probability of sexual reoffense at 23 percent over five years and 30 percent over ten years, absent programming. *Id.* Those figures are not trivial, and they describe a risk to children that will persist for as long as Salas is at liberty and untreated. A history that explains conduct is not the same as a history that excuses it. The Court can extend Salas real compassion for what was done to him while still

imposing a sentence commensurate with what he did to Minor Victim A and consistent with the § 3553(a) factors.

Salas's conduct in custody bears mention as well. While detained, he incurred a disciplinary violation for refusing to stand for headcount and, on a separate occasion, covered his cell window, impeding officers' ability to conduct welfare checks, kicked and struck the cell door, and announced that staff would find a "surprise" when they opened it. PSR ¶ 49. While the government recognizes that Salas has also engaged with mental-health programming during his detention, PSR ¶ 63, the record does not portray a defendant whose risk has resolved.

### 3. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

A sentence of 292 months reflects the seriousness of what Salas did and provides just punishment. The offense of conviction is one of the most serious in the federal code, and the aggravating features here of the age of the victim, the sustained duration, the deception, and the coercion place this case toward the more serious end of the production spectrum, not the mitigated end. The § 4B1.5(b) enhancement is not a technicality, it reflects the Commission's judgment that offenders who engage in a pattern of prohibited sexual conduct with minors warrant enhanced punishment because they present a heightened and enduring danger. PSR ¶ 35.

The probation officer observes that Salas's exploitation involved one identified victim over a limited period. PSR ¶ 104. The government respectfully submits that neither observation meaningfully reduces the seriousness of this offense. That there was one identified victim is a function of how the conduct was detected, not a measure of Salas's restraint and what Salas did to that one child, he did approximately 116 times over, across at least 85 images and 31 videos. PSR ¶ 17. Nor was five months "limited" from the vantage point of an eleven-year-old who spent that period being threatened, deceived, and directed to abuse herself. It was, for her, a sustained ordeal. A sentence at the bottom of the advisory range appropriately reflects the gravity of that ordeal while reserving the upper portion of the range for cases involving multiple victims or physical contact.

**4. The Need to Afford Adequate Deterrence**

General deterrence carries force in child-exploitation cases. Offenders like Salas operate in the belief that distance, anonymity, and fabricated identities will shield them. Salas used at least three personas and multiple accounts across several platforms precisely to obscure who he was. PSR ¶¶ 8, 11–14. A substantial sentence communicates to others who would exploit children online that the apparent anonymity of the internet offers no refuge and that the consequences are severe. As to specific deterrence, the diagnosis of pedophilic disorder and the quantified reoffense risk confirm that a

meaningful period of incarceration is necessary to deter Salas himself from returning to this conduct. PSR ¶ 64.

**5. The Need to Protect the Public**

The need to protect the public and children in particular weighs heavily here. Salas has been diagnosed with pedophilic disorder, and the risk assessment in the record reflects a substantial probability of sexual reoffense over both a five- and ten-year horizon. PSR ¶ 64. He demonstrated the sophistication to identify a child across state lines, to sustain contact through multiple platforms and invented personas, and to overcome a child's resistance through a combination of inducement, deception, and threat. PSR ¶¶ 8–16. Those are not skills that dissipate on their own. A Guidelines sentence provides a period of incapacitation commensurate with the risk, and the extended term of supervised release the government recommends with its computer-monitoring, association, and treatment conditions will provide the tools to manage that risk upon release. PSR ¶¶ 106–117.

**6. The Need to Avoid Unwarranted Sentencing Disparities**

The Judiciary Sentencing Information (JSIN) data in the PSR reflect that, for the 198 defendants sentenced under U.S.S.G. § 2G2.1 at a final offense level of 40 and criminal history category of I during fiscal years 2021 through 2025 (excluding substantial-assistance reductions), the average sentence was 254 months and the median was 243 months. PSR ¶ 82.

The government acknowledges that its recommendation of 292 months sits above those national figures, and it does not ask the Court to disregard them. But Section 3553(a)(6) is concerned with *unwarranted* disparities among similarly situated defendants, and the JSIN cohort is defined solely by offense level and criminal history. It does not, and cannot, account for the case-specific aggravators that distinguish this offense. The coercive, sextortion-style methodology, the fabrication of multiple personas to manipulate the child, the exploitation of the victim's fear of family separation, and Salas's expressed intent to travel to meet her. Where those features place a case toward the more serious end of the range, a within-Guidelines sentence at the bottom of that range does not create unwarranted disparity. It reflects the individualized weighing that § 3553(a) requires. A within-range sentence is, moreover, the sentence least likely to produce disparity, because it is anchored to the range the Commission itself has fixed for offenses of this level.

**7. The Need to Provide Correctional Treatment and Care**

Salas has significant mental-health, substance-abuse, and sex-offender treatment needs, and the government joins the PSR's recommendations for programming to address them. PSR ¶¶ 107–110. Prior to his arrest, Salas had never meaningfully engaged with treatment for his mental-health conditions, his diabetes and hypertension, or his longstanding marijuana and cocaine use. PSR ¶¶ 58, 62, 71, 105. A sentence of sufficient length to permit participation

in the Bureau of Prisons' sex-offender and substance-abuse programming serves the rehabilitative goals of § 3553(a)(2)(D), and the government does not oppose a recommendation that Salas be designated to a facility able to provide such programming and appropriate medical care. These recommendations are appropriate regardless of the length of the sentence, and they do not diminish the need for the substantial term of imprisonment that the other § 3553(a) factors require.

**Supervised Release and Restitution**

The statutory term of supervised release is 5 years to life. 18 U.S.C. § 3583(k); PSR ¶ 87. Given Salas's diagnosis of pedophilic disorder, the assessed risk of reoffense, and the sophistication of his offense conduct, the government recommends a lifetime term of supervised release, together with the mandatory, standard, and sex-offense-specific special conditions set forth in the PSR, including restrictions on computer and internet use and monitoring, restrictions on contact with minors, sex-offender assessment and treatment, and the no-contact condition as to the victim. PSR ¶¶ 106–117.

Restitution is mandatory. 18 U.S.C. § 2259(b)(2); PSR ¶¶ 96–97. The Court must order restitution in an amount reflecting Salas's relative role in the causal process underlying the victim's losses, but no less than $3,000. As of the date of this filing, no restitution claim has been received. PSR ¶¶ 20, 96. The government requests that the Court order restitution of no less than the

$3,000 statutory floor and, consistent with 18 U.S.C. § 3664(d)(5), that the Court set a date for the final determination of the victim's losses should any claim be received, reserving the government's ability to seek additional restitution for losses identified thereafter.

**Response to Defendant's Variance Request**

Salas asks the Court to set aside the advisory Guidelines and impose the fifteen-year mandatory minimum, the least severe sentence the law permits for the offense to which he pleaded guilty. He requests leniency after spending five months deceiving, threatening, and coercing an eleven-year-old girl into sexually abusing herself on camera for his gratification. The government respectfully opposes the defendant's Motion for Downward Variance (ECF No. 43). For the reasons set forth above, a sentence of 292 months' imprisonment is sufficient, but not greater than necessary, to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a). A sentence at the statutory floor is not.

The defendant's motion rests on a single premise, repeated in several forms: that because Salas never physically touched his victim, his offense lies at the bottom of the production spectrum and warrants the mandatory minimum. That premise does not survive the record. Salas did not passively receive images a child produced on her own. He identified an eleven-year-old girl, learned her name, her age, her family, her home address, and her school. He invented a cast of fictional personas to manipulate her. He threatened to

have her reported to the police and taken from her family. And, over and over, across five months, he directed her to penetrate and abuse herself while he watched and recorded. PSR ¶¶ 8–17. The same Presentence Investigation Report the defendant quotes for its "greater than necessary" language also designates him a repeat and dangerous sex offender against minors under U.S.S.G. § 4B1.5(b). PSR ¶ 35. Within the category of production offenses, Salas's conduct is aggravated, not mitigated, and the § 3553(a) factors call for a within-Guidelines sentence.

*The Court Is Not Required to Reject the Production Guidelines on Policy Grounds and Should Not Do So Here.*

Salas first urges the Court to reject U.S.S.G. § 2G2.1 categorically, on the ground that the child-pornography Guidelines are the product of congressional directive rather than empirical study. Def. Mem. § I. A sentencing court has the authority to vary based on a policy disagreement with a Guideline, but authority is not obligation. The Eighth Circuit has held that a district court is not required to disagree with the child-pornography Guidelines and may apply them as the Commission has written them. *United States v. Black*, 670 F.3d 877, 882 (8th Cir. 2012). Whether to entertain a categorical policy challenge rests in the Court's sound discretion, and nothing about § 2G2.1 compels the wholesale rejection the defendant seeks.

More to the point, the policy critique Salas borrows largely from possession cases does not fit this offense. The concern that enhancements for possession have become so common that they no longer distinguish among offenders has no real weight here, where every enhancement Salas received tracks a specific aggravating feature of his conduct. The victim's age, his use of a computer to solicit her participation, and his pattern of prohibited sexual conduct with a minor are all appropriately considered to enhance the egregiousness of his conduct. PSR ¶¶ 27, 30, 35. Section 2G2.1 assigns production a base offense level of 32 because production creates a permanent record of a child's sexual abuse. That judgment applies with full force to Salas, who manufactured that record himself. Even a court inclined toward a policy disagreement in the ordinary case would have no basis to treat this coercive, sustained production offense as the least serious of its kind.

*The Absence of Physical Contact and the Single Identified Victim Do Not Mitigate This Offense to the Statutory Floor.*

The centerpiece of the motion is that Salas had "no direct physical contact with his one victim." Def. Mem. §§ I, IV.A. That is true, and it is why the government seeks a sentence at the bottom of the range rather than above it. It is not a reason to impose the statutory minimum.

First, Salas overstates the mitigating force of the absence of contact. He caused an eleven-year-old to penetrate and sexually abuse herself, repeatedly,

at his direction, and preserved the results, including by capturing screenshots during a live video call with the child. PSR ¶¶ 14, 35. That conduct is not categorically less serious than hands-on abuse because the offense is production either way. And the absence of contact here reflected circumstance, not restraint. Salas told the child he wanted to travel to Minnesota to meet her. PSR ¶ 16. A defendant kept from physical contact only by a distance he was actively trying to close is not entitled to be sentenced as though that distance measured his character.

Second, the defendant's own authorities cut against him. He relies repeatedly on *United States v. R.V.*, 157 F. Supp. 3d 207 (E.D.N.Y. 2016), an out-of-circuit district court decision that defines producers of child pornography as "child molesters, frequently representing the worst and most dangerous type of offender." *Id.* at 210. And the 2021 Sentencing Commission study he cites, for the point that most production offenses involve physical contact, establishes only that many producers also commit contact offenses. It does not establish that a producer who instead runs a months-long coercive sextortion campaign against a child is meaningfully less culpable. The Commission's data describe the run of cases, but § 3553(a) requires the Court to sentence the case before it.

Third, the single-victim observation carries little weight where the exploitation of that one child was relentless. Salas amassed approximately 85

images and 31 videos of Minor Victim A's abuse, exchanged hundreds of messages with her, and deployed at least three fabricated personas to keep her compliant over five months. PSR ¶¶ 11–17. That he concentrated his conduct on a single child is not evidence of restraint, it is the reason the § 4B1.5(b) pattern enhancement applies.

Finally, Salas leans on the probation officer's observation that the range "appears greater than necessary." PSR ¶ 104. But the PSR expressly cautions that the presentation of information in Part F "does not necessarily constitute a recommendation by the probation officer for a variance," PSR ¶ 101, and the same officer applied the § 4B1.5(b) enhancement and calculated the 292-to-360-month range. The government's recommendation of 292 months already credits the considerations the probation officer identified.

*The Defendant's Age and Health Do Not Warrant a Variance.*

Salas next argues that his age and health conditions justify a variance because incarceration will fall harder on him than on a younger, healthier defendant. Def. Mem. § II. The argument merits some weight, but not the weight Salas assigns. Fifty-one is not elderly, and the study the defendant cites reaches him only because it defines "elderly" to begin at fifty. Salas's principal physical conditions of diabetes and hypertension are common, manageable, and, as the PSR reflects, have stabilized in custody now that he is receiving consistent care for the first time in years. PSR ¶¶ 58, 71. His

mental-health conditions have likewise stabilized with treatment during his detention. PSR ¶ 63. The Bureau of Prisons is equipped to provide the medical and mental-health care Salas requires, and his conditions neither diminish the seriousness of his offense nor reduce the need to protect children from him. Taken to its conclusion, the defendant's argument would entitle every middle-aged sex offender in imperfect health to the statutory minimum. Section 3553(a) does not compel that result.

*The Collateral Consequences of Conviction Do Not Justify a Shorter Term.*

Salas argues that the collateral consequences of a sex-offense conviction render any sentence above the mandatory minimum excessive. Def. Mem. § III. But those consequences flow from the fact of conviction, not from the length of the custodial term. Salas will register as a sex offender, serve a lengthy term of supervised release, and bear the associated restrictions whether the Court imposes 180 months or 292. Because those consequences are identical across the range, they supply no principled basis to reduce the term of imprisonment. And the prison-hardship argument, like the age argument, proves too much. It would apply to every defendant convicted of a sex offense and would drive every such sentence to the statutory floor. The Court should decline that invitation.

*The Remaining § 3553(a) Factors Confirm That 292 Months, Not the Mandatory Minimum, Is Sufficient but Not Greater Than Necessary.*

Salas emphasizes his lack of criminal history and the absence of any prior record of offenses against minors. Def. Mem. § IV.A.2. But criminal history category I is already built into the advisory range of 292 to 360 months. The JSIN cohort against which Salas is properly measured consists entirely of offenders at offense level 40 and criminal history category I, and the average sentence in that cohort was 254 months. PSR ¶ 82. A first offender is precisely whom the advisory range already describes, and Salas's lack of record is not a basis to depart below it to the floor.

Nor is Salas's self-portrait the mitigation he supposes. Drawing on Dr. Boswell's report, he casts himself as a lonely, isolated man who "created a fake identity of a caring, loving individual" and "became obsessed with contacting the minor." Def. Mem. § IV.A.2. That is a description of grooming. The deliberate construction of a false persona to win a child's trust, and fixation on a particular child, are hallmarks of a dangerous offender, not an accidental one. And the same evaluation the defendant invokes diagnoses him with pedophilic disorder and places his risk of sexual reoffense at 23 percent over five years and 30 percent over ten. PSR ¶ 64. The defendant cannot claim Dr. Boswell's optimism about treatment while disowning Dr. Boswell's diagnosis and risk assessment.

Salas also argues that fifteen years is a severe punishment for a man who has never been imprisoned. Def. Mem. § IV.B.1. It is. And so is 292 months. The question is not whether the mandatory minimum would be felt as a serious sanction, but whether it is *sufficient* to reflect the seriousness of *this* offense. It is not. A sentence at the floor would treat Salas's sustained, coercive exploitation of an eleven-year-old the same as the least aggravated production offense the mandatory minimum was written to reach, and would give no weight to the pattern of conduct that makes him a repeat and dangerous sex offender under § 4B1.5(b). The Court should decline to do this.

Salas also argues that the harshest sentences should be reserved for the most culpable conduct. Def. Mem. § IV.B.2. The government agrees with the principle and has honored it by seeking not the 360-month statutory maximum, nor anything near it, but the bottom of the advisory range. A within-range sentence of 292 months leaves ample room above Salas for the producer who abuses multiple victims or who physically assaults them. It is the defendant's request, not the government's, that is in tension with marginal deterrence. Imposing the 180-month floor would collapse the distinction between Salas, who is a repeat and dangerous sex offender who ran a months-long coercive campaign against a child, and the less aggravated first-time offender the mandatory minimum was designed to reach. General deterrence points the same way because offenders who exploit children online rely on

distance, anonymity, and fabricated identities, and a substantial sentence communicates that those tools offer no refuge.

Salas argues that his age and lack of record make him unlikely to reoffend, citing general studies of recidivism. Def. Mem. § IV.B.3. Those generalized observations are displaced here by an individualized assessment. The court-ordered evaluation diagnosed Salas with pedophilic disorder and scored his risk of sexual reoffense at 23 percent over five years and 30 percent over ten. PSR ¶ 64. Those are not the figures of a man who presents no danger. The demonstrated ability to identify a child across state lines, sustain contact through multiple platforms and invented identities, and overcome a child's resistance through inducement, deception, and threat is a durable risk that warrants the period of incapacitation a Guidelines sentence provides, followed by the lengthy supervised-release term and monitoring conditions the PSR recommends. PSR ¶¶ 106–117.

Finally, Salas argues that a fifteen-year sentence will afford him time for treatment while providing "a light at the end of the tunnel." Def. Mem. § IV.B.4. A 292-month sentence also has an end, and it provides more than enough time for the sex-offender and substance-abuse programming the Bureau of Prisons offers which Salas never previously sought. PSR ¶ 105. Salas's amenability to treatment is a reason to ensure he receives it, not a reason to shorten the sentence the remaining § 3553(a) factors require.

*Designation and Restitution.*

The government does not oppose the defendant's request that the Court recommend designation to FCI Seagoville, or another facility near San Antonio, Texas, provided the designated facility can accommodate his sex-offender treatment and medical needs. As to restitution, the government has not yet received the victim's restitution materials. Restitution is mandatory in an amount no less than $3,000. 18 U.S.C. § 2259(b)(2); PSR ¶¶ 96–97. The government will provide the victim's documentation to the Court as soon as it is received, and respectfully requests that, consistent with 18 U.S.C. § 3664(d)(5), the Court set a date for the final determination of the victim's losses should those materials not be available at sentencing.

## Conclusion

A sentence of 292 months' imprisonment followed by a lifetime term of supervised release is sufficient but not greater than necessary to reflect the seriousness of that offense, to provide just punishment, to afford adequate deterrence, and to protect the public and its children from further harm. The government respectfully requests that the Court impose that sentence.

Dated: August 12, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*/s/ Albania Concepcion*
BY: ALBANIA CONCEPCION
Attorney ID No. 0401536
Assistant United States Attorney
District of Minnesota